## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### Lufkin Division

KATTIE SIMON,

     *Plaintiff,*

       vs.

COOK INCORPORATED;
COOK MEDICAL INCORPORATED;
COOK GROUP INCORPORATED; COOK
MEDICAL LLC; and, WILLIAM COOK
EUROPE APS,

     *Defendants.*

Civil Action No. 9:26-cv-00087

<u>JURY TRIAL DEMANDED</u>

## <u>COMPLAINT</u>

Plaintiff Kattie Simon, by and through her undersigned attorneys, hereby sues Defendants Cook Incorporated, Cook Medical Incorporated, Cook Group Incorporated, Cook Medical LLC, and William Cook Europe ApS, and alleges as follows:

## <u>PARTIES</u>

1.    Plaintiff Kattie Simon ("Plaintiff") is an individual who currently resides in, and is a citizen of Nacogdoches County, Texas.

2.    Defendant Cook Incorporated is incorporated under the laws of the State of Indiana with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Cook Incorporated was and is a foreign corporation doing business in the State of Texas, including Nacogdoches County. At all times relevant to this action, Cook Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed,

distributed, and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Texas. At all times relevant hereto, Defendant Cook Incorporated was engaged in business, has conducted substantial business activities, and derived substantial revenue from within Texas. Defendant has also carried on solicitations or service activities in Texas. The registered agent for Cook Incorporated is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204. Cook Incorporated may be served with process by delivering a Summons with a copy of this Complaint attached thereto to its registered agent.

3.      Defendant Cook Incorporated is the parent company of Defendant Cook Medical Incorporated. Defendant Cook Medical Incorporated was incorporated under the laws of the State of Indiana with its principal place of business located at 111 Monument Circle, Suite 4000, Indianapolis, Indiana 46204. On or about January 1, 2014, Cook Medical Incorporated converted into an Indiana limited liability corporation named Cook Medical LLC. At all times relevant to this cause of action, Cook Medical Incorporated was a foreign corporation doing business in the State of Texas, including Nacogdoches County. At all times relevant to this action, Cook Medical Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed, and/or sold the IVC filter known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Texas. At all times relevant hereto, Defendant Cook Medical Incorporated was engaged in business in Texas, has conducted substantial business activities, and derived substantial revenue from within Texas. This Defendant has also carried on solicitations or service activities in Texas. The registered agent for Cook Medical Incorporated is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204. Cook Medical Incorporated may be

**COMPLAINT – Page 2**

served with process by delivering a Summons with a copy of this Complaint attached thereto to its registered agent.

4.      Defendant Cook Group Incorporated is incorporated under the laws of the State of Indiana with its principal place of business located at 750 N. Daniels Way, Bloomington, IN 47404. Cook Group Incorporated is a foreign corporation doing business in the State of Texas, including Nacogdoches County. At all times relevant to this action, Cook Group Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed, and sold the IVC filter known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Texas. At all times relevant hereto, Defendant Cook Group Incorporated was engaged in business, has conducted substantial business activities, and derived substantial revenue from within Texas. Defendant has also carried on solicitations or service activities in Texas. The registered agent for Cook Group Incorporated is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204. Cook Group Incorporated may be served with process by delivering a Summons with a copy of this Complaint attached thereto to its registered agent.

5.      Defendant Cook Incorporated is the parent company, sole shareholder, and only member of Defendant Cook Medical LLC. Cook Incorporated is an Indiana Corporation with its principal place of business in Indiana. Cook Medical LLC is a limited liability company incorporated under the laws of the State of Indiana with its principal place of business at 750 N. Daniels Way, Bloomington, IN 47404. Cook Medical LLC is a foreign limited liability company which at all times relevant to this cause of action was doing business in the State of Texas, including Nacogdoches County. At all times relevant to this action, Cook Medical LLC designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted,

**COMPLAINT – Page 3**

marketed, distributed, and/or sold the IVC filter known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Texas.  At all times relevant hereto, Defendant Cook Medical LLC was engaged in business in Texas, has conducted substantial business activities and derived substantial revenue from within Texas.  Defendant has also carried on solicitations or service activities in Texas.  The registered agent for Cook Medical LLC is Corporation Service Company dba CSC – Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.  Cook Medical LLC may be served with process by delivering a Summons with a copy of this Complaint attached thereto to its registered agent.

6.      Defendant William Cook Europe ApS ("Defendant Cook Europe") is organized under the laws of Denmark and its business form most closely resembles that of an American corporation.  It is a foreign corporation that regularly conducts business in the State of Texas. Defendant William Cook Europe ApS's headquarters is based at Sandet 6 Bjaeverskov 4632, Denmark.  A request to waive service will be delivered in accordance with Fed. R. Civ. P. 4(d).

7.      Defendants  Cook  Incorporated,  Cook  Incorporated  a/k/a  Cook  Medical Incorporated, Cook Group Incorporated, Cook Medical LLC, and William Cook Europe ApS shall be referred to herein individually by name or collectively as the "Cook Defendants."

8.      At all times alleged herein, Cook Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

9.      At all times herein mentioned, each of the Cook Defendants were the agents, servants, partners, predecessors in interest, and joint venturers of each other, and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership,

**COMPLAINT – Page 4**

joint enterprise, and/or joint venture.

## JURISDICTION AND VENUE

10.     Personal jurisdiction is proper pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.* and 28 U.S.C. § 1332.  The Cook Defendants have conducted and continue to conduct substantial and systematic business activities related to their IVC filters, including the Gunther Tulip™ Vena Cava Filter (hereinafter "Cook Gunther Tulip filter") at issue in this case, in this jurisdiction.  Such activities include, but are not limited to: (a) sales of IVC filters, including the Cook Gunther Tulip filter at issue in this case, in this jurisdiction; (b) hiring, training, and deploying employees, including managers and sales representatives, in this jurisdiction; (c) advertising and marketing of their IVC filters, including the Cook Gunther Tulip filter at issue in this case, in this jurisdiction; (d) maintenance of company files and equipment relating to the Cook Gunther Tulip filter in this case, in this jurisdiction; (e) payment of employee salaries in this jurisdiction; and, (f) maintenance of a website directed to all states, including Texas.  Defendant Cook Medical LLC is registered to do business in the State of Texas.  The Cook Defendants also committed tortious acts within Texas and caused injury to persons or property within Texas arising out of acts or omissions by the Cook Defendants outside of this state at or about the time of the Plaintiff's injury, while the Cook Defendants were engaged in solicitation or service activities within Texas, and/or while products, materials, or things processed, serviced, or manufactured by the Cook Defendants were used or consumed within Texas in the ordinary course of commerce, trade, or use.

11.     There is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.  *See,* 28 U.S.C. § 1332.

12.     Venue is properly laid pursuant to 28 U.S.C. § 1391(b)(2) and (d), as the Cook

Defendants' Gunther Tulip filter failed in Nacogdoches County, Texas, and the Defendants are corporations subject to personal jurisdiction in the district.  A substantial part of the events or omissions giving rise to the claim occurred in this district.

13.     Plaintiff's claims in this action are brought solely under state law.  Plaintiff does not herein bring, assert, or allege, either expressly or impliedly, any causes of action arising under any federal law, statute, regulation, or provision.  Thus, there is no federal jurisdiction in this action on the basis of a federal question under 28 U.S.C. § 1331.

## ALTERNATIVE ALLEGATIONS

14.     To the extent any allegation herein is inconsistent with any other allegation, such inconsistent allegations are pleaded in the alternative pursuant to Fed. R. Civ. P. 8(d)(3).

## GENERAL FACTUAL ALLEGATIONS

15.     Plaintiff brings this case for serious, life-threatening injuries she suffered as a result of the Cook Defendants' surgically implanted medical device, the Cook Gunther Tulip filter, that was implanted at Nacogdoches Memorial Hospital in Nacogdoches, Texas on or about October 28, 2014.

16.     Cook Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell products such as IVC filters that are sold to and marketed as both permanent and retrievable devices to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.  One such product is the Cook Gunther Tulip filter.

17.     Cook Defendants sought Food and Drug Administration ("FDA") clearance to market the Cook Gunther Tulip filter and/or its components under Section 510(k) of the Medical Device Amendment.

18.    On or about October 18, 2000, the Cook Defendants obtained FDA clearance to market the Cook Gunther Tulip filter under Section 510(k) of the Medical Device Amendment as a permanent IVC filter.

19.    On or about October 31, 2003, the Cook Defendants obtained FDA clearance to market the Cook Gunther Tulip under Section 510(k) of the Medical Device Amendment as a retrievable IVC filter.

20.    Section 510(k) allows marketing of medical devices if the manufacturer claims the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of said device.  The device is then cleared by the FDA under Section 510(k).  The Cook Defendants claimed that the Cook Gunther Tulip filter was substantially equivalent to the Greenfield and LGM Vena Tech IVC filters.  The Greenfield and LGM IVC Vena Tech filters are permanent IVC filters, meaning the Cook Defendants expressly represented to the FDA that the Gunther Tulip filter could be used permanently, i.e., for the Plaintiff's lifetime.

21.    An IVC filter like the Cook Gunther Tulip filter is a device ostensibly designed to filter blood clots (called "thrombi") that would otherwise travel from the lower portions of the body to the heart and lungs.  IVC filters are marketed as being safe to be permanently implanted, within the vena cava with the option to be removed.

22.    The inferior vena cava ("IVC") is a vein that returns blood to the heart from the lower and middle portions of the body.  In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs.  These thrombi can develop in the deep leg veins.  The thrombi are called "deep vein thrombosis" or DVT.  If the thrombi reach the lungs, they are considered "pulmonary emboli" or PE.

23.    The Cook Gunther Tulip filter has four (4) anchoring struts for fixation with webbed wires (like tulip petals) between each of the anchoring struts.

24.    Plaintiff was implanted with a Cook Gunther Tulip IVC filter on or about October 28, 2014.  The Cook Gunther Tulip filter placed in Plaintiff was stated to be appropriate for use as a permanent filter with the option to be retrieved.

25.    On or about February 15, 2024, Plaintiff underwent a computerized tomography scan ("CT scan") of her abdomen, which showed multiple struts perforating the IVC with struts abutting/into the duodenum.

26.    Plaintiff faces numerous health risks, including the risks of death.  Plaintiff will require ongoing medical care and monitoring for the rest of her life.

27.    At all times relevant hereto, the Cook Gunther Tulip filter was widely advertised and promoted by the Cook Defendants as a safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

28.    At all times relevant hereto, the Cook Gunther Tulip filter was widely advertised and promoted by the Cook Defendants specifically for use as a permanent IVC filter with the option to be removed, meaning that it would function safely for the lifetime of the patients in which it was implanted.

29.    At all times relevant hereto, the Cook Defendants knew their retrievable IVC filters were defective and knew that the defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in *vivo*.

30.    The Cook Defendants knew the efficacy of the Cook Gunther Tulip filter to prevent fatal pulmonary embolisms is disputed and failed to disclose to physicians and patients, including Plaintiff and her healthcare providers, that there is a lack of clinical evidence to support the

assertion the filters were effective in preventing fatal pulmonary embolisms or that they actually improve patient outcomes.

31.    The Cook Defendants failed to disclose to physicians and patients, including Plaintiff and her healthcare providers, that their retrievable IVC filters, including the Cook Gunther Tulip filter, were subject to breakage, perforation, collapse, causing thrombus, and/or risk of damage to the vena cava wall.

32.    At all times relevant hereto, the Cook Defendants continued to promote their retrievable IVC filters, including the Cook Gunther Tulip filter, as safe and effective as permanent filters with the option to be retrieved, even though the clinical trials that had been performed were not adequate to support long or short-term efficacy.

33.    The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with its IVC filters, including the Cook Gunther Tulip filter, as aforesaid.

34.    At all times relevant hereto, the Cook Defendants failed to provide sufficient warnings and instructions that would have put Plaintiff, her implanting physician and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Gunther Tulip filter, including, but not limited to, the design's failure to withstand the normal anatomical and physiological loading cycles exerted in *vivo*.

35.    The Cook Gunther Tulip filter was designed, manufactured, distributed, sold, and/or supplied by the Cook Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of the Cook Defendants' knowledge of the product's failure and serious adverse events.

36.    At all times relevant hereto, the officers and/or directors of the Cook Defendants

named herein participated in, authorized, and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## <u>DISCOVERY RULE AND FRAUDULENT CONCEALMENT</u>

37.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein and additionally, or in the alternative, if same may be necessary, alleges as follows.

38.    Plaintiff pleads that the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff knew, or through the exercise of reasonable care and diligence should have known, of facts indicating that Plaintiff had been injured, the cause of the injury, and the tortuous nature of the wrongdoing that caused the injury.

39.    Despite diligent investigation by Plaintiff into the cause of her injuries, including consultations with Plaintiff's medical providers, the nature of Plaintiff's injuries and damages and their relationship to the Cook Gunther Tulip filter and the Cook Defendants' wrongful conduct was not discovered, and through reasonable care and due diligence, could not have been discovered until a date within the applicable statute of limitations for filing Plaintiff's claims.  Therefore, under appropriate application of the discovery rule, Plaintiff's suit was filed well within the applicable statutory limitations period.

40.    Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by the Cook Defendants when they had a duty to disclose those facts.  The Cook Defendants' purposeful and fraudulent acts of concealment have kept Plaintiff ignorant of vital information essential to the pursuit of her claims, without any fault

or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's part in filing on her causes of action.  The Cook Defendants' fraudulent concealment did result in such delay.

41.     Through their Instructions for Use for the Gunther Tulip IVC filter, the Cook Defendants made the following express representations regarding the Gunther Tulip filter to the medical community, implanting physicians, and Plaintiff's implanting physician: "The Günther Tulip Filter implant is designed to act as a permanent filter or retrievable filter."

42.     Through their catalogs, sales materials and Patient Guides, Cook made the following express representations regarding the Gunther Tulip filter to the medical community, implanting physicians, and patients:

    a.    "The Günther Tulip Vena Cava Filter is often used as a permanently implanted device. Patients are able to lead a normal, active lifestyle, and rarely have complications from having the filter implanted."

    b.    ". . . these filters can also remain in place as permanent devices."

    c.    "The Günther Tulip and Celect vena cava filters can stay in place permanently or they can be removed . . . ."

    d.    "Temporary or permanent, the Tulip puts the choice in your hands.  It is safe and effective as a permanent filter . . . ."

43.     In its instructions for use and marketing materials, Cook represents the filter implanted in the Plaintiff is safe to remain permanently in the body, all while concealing the issues known to Cook as to the complications with their filter when placed as a permanent filter.  Given the express representations made by Cook, implanting physicians and patients would not be expected to understand the significance of such events as tilt, embedment, perforation, or an inability to retrieve the filter as indications that the filter is defective or the source of an injury, and so Cook conceals the fact the patient has legal recourse against the Cook Defendants.

**COMPLAINT – Page 11**

44.     Based on information and belief, Plaintiff's implanting physician was aware of the representations included in Cook's Marketing materials and Instructions for Use that the filter implanted in the Plaintiff was safe to remain permanently in the body, and Plaintiff's implanting physician relied upon those representations when choosing to implant the Gunther Tulip Filter in the Plaintiff.

45.     Based upon information and belief, had the above false representations not been made, the referenced information not been concealed from Plaintiff's implanting physician, and had the risks with the Gunther Tulip filter been properly disclosed, Plaintiff's implanting physician would not have implanted a Gunther Tulip filter in Plaintiff Kattie Simon and/or let it remain implanted as a permanent filter.  If Plaintiff's implanting physician would have disclosed the above risks to Plaintiff Kattie Simon, which could only happen if the risks were properly disclosed to Plaintiff's implanting physician, Plaintiff Kattie Simon would have refused to have a Gunther Tulip filter implanted in her and/or insisted that it be removed before as soon as medically reasonable.    As a result, Cook's acts, or omissions, including the above referenced misrepresentations and fraudulent concealment, caused, including proximately caused, Plaintiff's injuries.

46.     Cook's acts or omissions, including the fraudulent concealment, which were intended to conceal Plaintiff's injuries from Plaintiff Kattie Simon, prevent inquiry by the Plaintiff, elude investigation by the Plaintiff and/or mislead the Plaintiff as to whether she had valid claims or causes of action against the Defendants.  As a result, the Plaintiff could not have discovered her causes of action despite exercising reasonable care and diligence and she was prevented from discovering she had legal claims against Cook.

47.     The Cook Defendants are estopped from relying on the statute of limitations

defense because the Cook Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of the Cook Gunther Tulip Filter.

48.     The Cook Defendants were and remain under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them.  The Cook Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which it must have realized was dangerous, heedless, and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## CORPORATE/VICARIOUS LIABILITY

49.     At all times herein mentioned, the Cook Defendants were agents, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

50.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Cook Defendants such that any individuality and separateness between them have ceased and these Cook Defendants are alter egos.  Adherence to the fiction of the separate existence of these Cook Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction fraud and/or would promote injustice.

51.     At all times herein mentioned, the Cook Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, advertising for sale, and/or selling products for use by the Plaintiff.  As such, each Defendant is

individually, as well as jointly and severally, liable to the Plaintiff for Plaintiff's damages.

52.     At all times herein mentioned, the officers and/or directors of the Cook Defendants participated in, authorized and/or directed the production, marketing, promotion, and sale of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

## COUNT I
## NEGLIGENCE

53.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

54.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Cook Gunther Tulip filter.

55.     The Cook Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed, and sold the Cook Gunther Tulip filter that was implanted into Plaintiff.

56.     The Cook Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Cook Gunther Tulip filter so as to avoid exposing others to foreseeable and unreasonable risks of harm.

57.     The Cook Defendants knew or should have known that the Cook Gunther Tulip filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

58.     At the time of manufacture and sale of the Cook Gunther Tulip filter (2000 until Present), the Cook Defendants knew or should have known that:

a.    The Cook Gunther Tulip filter was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

b.    The Cook Gunther Tulip filter was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

c.    The Cook Gunther Tulip filter was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall;

d.    The Cook Gunther Tulip filter was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or,

e.    There were no clinical trials which adequately established the safety and efficacy of filter in preventing pulmonary embolisms.

59.    At the time of manufacture and sale of the Cook Gunther Tulip filter (2000 until Present), the Cook Defendants knew or should have known that using the Cook Gunther Tulip filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac tamponade; thrombus, cardiac arrhythmia, and other symptoms similar to myocardial infarction; perforations of tissue, vessels, structures and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with the attendant risk of life threatening complications.

60.    The Cook Defendants knew or should have known that consumers of the Cook Gunther Tulip filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

61.    The Cook Defendants breached their duty to exercise reasonable and prudent care

in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Cook Gunther Tulip filter in, among others, the following ways:

a.   Designing and distributing a product which the Cook Defendants knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

b.   Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;

c.   Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

d.   Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff, Plaintiff's physicians, Plaintiff's agents, or the general health care community about the Cook Gunther Tulip filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e.   Failing to perform reasonable pre- and post-market testing of the Cook Gunther Tulip filter to determine whether or not the product was safe for its intended use;

f.   Failing to provide adequate instructions, guidelines, and safety precautions, including pre- and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Cook Gunther Tulip filter;

g.   Advertising, marketing and recommending the use of the Cook Gunther Tulip filter, as a permanent but retrievable filter—while concealing and failing to disclose or warn of the dangers known by Cook Defendants to be connected with and inherent in the use of the Cook Gunther Tulip filter;

h.   Representing that the Cook Gunther Tulip filter was safe for its intended use when in fact, the Cook Defendants knew and should have known the product was not safe for its intended purpose;

i.   Representing that the Cook Gunther Tulip filter was safe for permanent use when in fact, the Cook Defendants knew and should have known the product was not safe for permanent placement and risk of filter failure increased the longer the filter was in place in the patient's body;

j.   Continuing to manufacture and sell the Cook Gunther Tulip filter with the knowledge that the product was dangerous and not reasonably safe;

k.   Failing to use reasonable and prudent care in the design, research, manufacture, and

**COMPLAINT – Page 16**

development of the Gunther Tulip filter so as to avoid the risk of serious harm associated with the use of the Cook Gunther Tulip filter;

l.      Advertising, marketing, promoting and selling the Cook Gunther Tulip filter for uses other than as approved and indicated in the product's label;

m.     Failing to establish an adequate quality assurance program used in the manufacturing of the Cook Gunther Tulip filter; and,

n.      Failing to establish and maintain an adequate post-market surveillance program.

62.    A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

63.    As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**COUNT II**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

64.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

65.    The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Cook Gunther Tulip filter, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

66.    At the time the Cook Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the Cook Defendants knew or should have known the device presented an unreasonable

danger to users of the product when put to its intended and reasonably anticipated use.

67.    Specifically, the Cook Defendants knew or should have known at the time they manufactured, labeled, distributed, and sold the Cook Gunther Tulip filter that was implanted into Plaintiff that it posed a significant and higher risk than other similar devices of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting in serious injuries. Additionally, the Cook Defendants knew or should have known that the filter was not safe for permanent placement in the body and should have been retrieved when the increased risk of a pulmonary embolism had passed.

68.    Consequently, the Cook Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

69.    The Cook Defendants further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted into Plaintiff.

70.    Despite their duties, the Cook Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Gunther Tulip filter, and further failed to adequately provide instructions on the safe and proper use of the device.  These failures rendered the Cook Gunther Tulip filter unreasonably dangerous to Plaintiff.

71.    Despite their duties, the Cook Defendants failed to adequately warn that the Gunther Tulip filter was not safe for permanent implantation in the human body or that the risks of filter failure resulting in serious injury increased the longer the filter was in place in the body, and further failed to adequately provide instructions on the safe and proper useful life of the device of the device.  These failures rendered the Cook Gunther Tulip filter unreasonably dangerous to

Plaintiff.

72.     No health care provider or patient, including Plaintiff and her healthcare providers, would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

73.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

74.     Plaintiff and Plaintiff's health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

75.     Therefore, the Cook Gunther Tulip filter implanted into Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling, and/or instructions accompanying the product.

76.     The Cook Gunther Tulip filter implanted into Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed, and sold by the Cook Defendants.

77.     As a direct and proximate result of the Cook Defendants' lack of sufficient warning and/or instructions, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

### COUNT III
### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

78.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

79.     At all times relevant to this action, the Cook Defendants developed, tested,

designed, manufactured, inspected, labeled, promoted, distributed, and sold into the stream of commerce the Cook Gunther Tulip filter, including the one implanted in Plaintiff.

80.    The Cook Gunther Tulip filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left the Cook Defendants' possession.  In the alternative, any changes that were made to Cook Gunther Tulip filter implanted in Plaintiff were reasonably foreseeable to the Cook Defendants.

81.    The Cook Gunther Tulip filter implanted into Plaintiff was defective in design in the following ways:

  a. It failed to perform as safely as persons who ordinarily use the product would have expected at the time of use; and,

  b. Its risks of harm exceeded its claimed benefits.

82.    The Cook Defendants knew that safer alternative designs were available, which would have prevented or significantly reduced the risk of the injury presented by Cook Gunther Tulip filter.  Further, it was economically and technologically feasible at the time the filter left the control of the Cook Defendants to prevent or reduce the risk of such a dangerous event by application of existing, or reasonably achievable, scientific knowledge.

83.    Plaintiff and Plaintiff's health care providers used the Cook Gunther Tulip filter in a manner that was reasonably foreseeable to the Cook Defendants.

84.    Neither Plaintiff, nor Plaintiff's health care providers could have, by the exercise of reasonable care, discovered the device's defective condition or perceived its unreasonable dangers prior to Plaintiff's implantation with the device.

85.    The defective design of the Gunther Tulip filter was a producing cause of Plaintiff's injuries.

86.    As a result of the Cook Gunther Tulip filter's defective design, Plaintiff has suffered

and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

### COUNT IV
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

87.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the forgoing paragraphs of this Complaint as though fully set forth herein.

88.    At all times relevant to this action, the Cook Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Cook Gunther Tulip filter, including the one implanted in Plaintiff, for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

89.    At the time and place of sale, distribution, and supply of the Cook Gunther Tulip filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, the Cook Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Cook Gunther Tulip filter was safe and effective for its intended and reasonably foreseeable use as a permanent IVC filter.

90.    The Cook Defendants knew of the intended and reasonably foreseeable use of the Cook Gunther Tulip filter at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use as a permanent IVC filter.

91.    The Cook Defendants impliedly represented and warranted to the healthcare community, Plaintiff and Plaintiff's health care providers, that the Cook Gunther Tulip filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was

intended and marketed to be used.

92.    The representations and implied warranties made by the Cook Defendants were false, misleading, and inaccurate because the Cook Gunther Tulip filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner.  Specifically, at the time of Plaintiff's purchase of the Cook Gunther Tulip filter from the Cook Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

a.    It was designed in such a manner so as to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of the Inferior Vena Cava and other bodily organs;

b.    It was designed in such a manner so as to result in an unreasonably high rate of injury to the organs and anatomy;

c.    It was manufactured in such a manner so that the Gunther Tulip filter system was inadequately, improperly, and inappropriately prepared and/or finished, so as to be prone to an unreasonably high rate of failure and/or causing the device to fail; and,

d.    It was designed in such a manner as to be unsafe for permanent placement in the body with the risk of injury from the filter increasing the longer the Gunther Tulip filter remains in the body.

93.    Plaintiff and Plaintiff's health care providers reasonably relied on the superior skill and judgment of the Cook Defendants as the designers, researchers, and manufacturers of the product, as to whether the Cook Gunther Tulip filter was of merchantable quality, safe and fit for its intended use and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Cook Gunther Tulip filter was manufactured and sold.

94.    The Cook Defendants placed the Cook Gunther Tulip filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Cook Gunther Tulip filter was manufactured and sold.

**COMPLAINT – Page 22**

95.     The Cook Defendants breached their implied warranty because their Cook Gunther Tulip filter was not fit for its intended use and purpose.

96.     As a direct and proximate result of the Cook Defendants breaching their implied warranties, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT V
## BREACH OF EXPRESS WARRANTY

97.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

98.     At the time and place of sale, distribution, and supply of the Cook Gunther Tulip filter to Plaintiff by way of Plaintiff's health care providers and medical facilities, the Cook Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Cook Gunther Tulip filter was safe and effective for its intended and reasonably foreseeable use as a permanent IVC filter.

99.     At all times relevant hereto, the Cook Gunther Tulip filter was widely advertised and promoted by the Cook Defendants as a safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.  This statement was included in the IFUs, sales materials, website and patient guides.

100.    The Cook Defendants knew the efficacy of the Cook Gunther Tulip filter to prevent fatal pulmonary embolisms is disputed and failed to disclose to physicians and patients, including Plaintiff and her healthcare providers, that there is a lack of clinical evidence to support the assertion the filters were effective in preventing fatal pulmonary embolisms or that they actually improved patient outcomes.

101.    Through their Instructions for Use for the Gunther Tulip IVC filter, the Cook Defendants made the following express representations regarding the Gunther Tulip filter to the medical community, implanting physicians, and Plaintiff's implanting physician: "The Günther Tulip Filter implant is designed to act as a permanent filter or retrievable filter."

102.    Through their catalogs, sales materials and Patient Guides, Cook made the following express representations regarding the Gunther Tulip filter to the medical community, implanting physicians, and patients:

   a.    "The Günther Tulip Vena Cava Filter is often used as a permanently implanted device. Patients are able to lead a normal, active lifestyle, and rarely have complications from having the filter implanted."

   b.    ". . . these filters can also remain in place as permanent devices."

   c.    "The Günther Tulip and Celect vena cava filters can stay in place permanently or they can be removed . . . ."

   d.    "Temporary or permanent, the Tulip puts the choice in your hands.  It is safe and effective as a permanent filter . . . ."

103.    The only reason the Cook Defendants were able to market the Gunther Tulip Filter in the United States and thus the only reason the Gunther Tulip Filter could be implanted in the Plaintiff was because the Cook Defendants expressly represented and warranted to the FDA that the device was safe for use as a permanent filter.  But for the Cook Defendants' express representation and warranty, the Plaintiff and her implanting physician could not have purchased the Gunther Tulip filter, and it would not have been available to be implanted in the Plaintiff's body.  Through this express representation, the Cook Defendants warranted the Gunther Tulip filter implanted in the Plaintiff had a useful life for the Plaintiff's lifetime.

104.    Plaintiff, the Plaintiff's implanting physician and Plaintiff's health care providers reasonably relied on the express representations by the Cook Defendants that the Cook Gunther

Tulip filter was safe for permanent implantation in selecting the Cook Gunther Tulip filter for placement in the Plaintiff's body and for permitting the filter to remain implanted in her body.

105.    The Cook Defendants breached their warranty because their Cook Gunther Tulip filter was not fit use as a permanent filter.

106.    As a direct and proximate result of the Cook Defendants breaching their warranties, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

107.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

108.    At all times relevant to this cause, and as detailed above, the Cook Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Cook Gunther Tulip filter, including, but not limited to, misrepresentations relating to the following subject areas:

    a.    safety of the Cook Gunther Tulip filter;

    b.    efficacy of the Cook Gunther Tulip filter;

    c.    rate of failure of the Cook Gunther Tulip filter;

    d.    the limits to the duration in which the Cook Gunther Tulip Filter could remain safely implanted in the body and,

    e.    approved uses of the Cook Gunther Tulip filter.

109.    The information distributed by the Cook Defendants to the public, the medical

community, and Plaintiff's health care providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, catalogs, sales materials and Patient Guides, and commercial media containing material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Cook Gunther Tulip filter.   These materials included instructions for use and warning documents that were included in the package of the Cook Gunther Tulip filter that was implanted into Plaintiff.

110.    The Cook Defendants' intent and purpose in making these representations was to deceive and defraud the public and the medical community, including Plaintiff's health care providers and Plaintiff's agents; to gain the confidence of the public and the medical community, including Plaintiff's health care providers and Plaintiff's agents; to falsely assure them of the quality of the Cook Gunther Tulip filter and its fitness for use; and, to induce the public and the medical community, including Plaintiff's healthcare providers, to request, recommend, prescribe, implant, purchase, and continue to use the Cook Gunther Tulip filter.

111.    The foregoing representations and omissions by the Cook Defendants were in fact false.  The Cook Gunther Tulip filter is not safe, fit, and effective for human use in its intended and reasonably foreseeable manner.  The Cook Gunther Tulip filter is not safe, fit, and effective for human use as a permanent Inferior Vena Cava filter.  The use of the Cook Gunther Tulip filter is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.  Further, the device has a significantly higher rate of failure and injury than do other comparable devices.  The device is not safe for permanent implantation in the body and risks of failure of the filter and injury increase significantly the longer the Gunther Tulip filter remains in the patient's body.

112.    In reliance upon the false and negligent misrepresentations and omissions made by the Cook Defendants, Plaintiff, Plaintiff's agents, Plaintiff's implanting physician and Plaintiff's health care providers were induced to, and did use the Cook Gunther Tulip filter, thereby causing Plaintiff to sustain severe and permanent personal injuries.

113.    The Cook Defendants knew and had reason to know that Plaintiff, the Plaintiff's implanting physician, Plaintiff's health care providers, Plaintiff's agents, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by the Cook Defendants and would not have prescribed and implanted same if the true facts regarding the device had not been concealed and misrepresented by the Cook Defendants.

114.    The Cook Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Cook Gunther Tulip filter.

115.    At the time the Cook Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Cook Gunther Tulip filter, Plaintiff, Plaintiff's implanting physician, Plaintiff's health care providers, and Plaintiff's agents were unaware of said Cook Defendants' negligent misrepresentations and omissions.

116.    Plaintiff's health care providers, Plaintiff's agents, and the general medical community reasonably relied upon the foregoing misrepresentations and omissions made by the Cook Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Cook Gunther Tulip filter.

117.    Plaintiff's health care providers' and Plaintiff's agents' reliance on the foregoing misrepresentations and omissions by the Cook Defendants were the direct and proximate cause of

Plaintiff's injuries as described herein.  As a result of the Cook Defendants' misrepresentations and omissions, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PUNITIVE DAMAGES CLAIM

118.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

119.    Plaintiff is entitled to an award of punitive and exemplary damages based upon the Cook Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their reckless disregard for the public safety and welfare.

120.    The Cook Defendants had knowledge of, and were in possession of evidence demonstrating that, the Cook Gunther Tulip filter was defective, unreasonably dangerous, and had a substantially higher failure rate than did other similar devices on the market.  Despite their knowledge, the Cook Defendants failed to, among other purposeful acts, inform or warn Plaintiff, Plaintiff's agents, or her health care providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the Cook Gunther Tulip filter from the market.

121.    As a direct, proximate, and legal result of the Cook Defendants' acts and omissions as described herein, Plaintiff seeks punitive damages in the amount the jury finds sufficient to deter the Defendants in the future.

## PRAYER FOR DAMAGES

WHEREFORE, Plaintiff Kattie Simon, prays for relief on the entire complaint, as follows:

a.    Judgment to be entered against all Cook Defendants on all causes of action in this Complaint, including but not limited to:

1.    Physical pain and suffering in the past and which, in reasonable probability, she will continue to suffer in the future;

2.    Physical impairment and incapacity in the past and which, in reasonable probability, she will continue to suffer in the future;

3.    Mental anguish in the past and which, in reasonable probability, she will sustain in the future;

4.    Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses she will need in the future; and,

5.    Punitive damages.

b.    Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

c.    Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post-judgment interest pursuant to the laws of the State of Texas as authorized by law on the judgments entered on Plaintiff's behalf; and,

d.    Such other relief the court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands trial by jury on all issues.

Dated: February 5, 2026.

Respectfully Submitted,

**BEN MARTIN LAW GROUP, PLLC**

By:    <u>*/s/Ben C. Martin*</u>
Ben C. Martin, Esq.
bmartin@bencmartin.com
Thomas Wm. Arbon, Esq.
tarbon@bencmartin.com
3500 Maple Avenue, Suite 400
Dallas, Texas 75219
T:  (214) 761-6614
F:  (214) 744-7590

***Attorneys for Plaintiff***

**COMPLAINT – Page 29**